**EXHIBIT A**



## SERVICE AGREEMENT FOR PHYSICIAN LOCUM TENENS COVERAGE
## FEES IN SIGNED ACCEPTANCE LETTER

This Service Agreement for Physician Locum Tenens Coverage, Fees in Signed Acceptance Letter ("Agreement") by and between Crozer-Keystone Health Care System ("Client"), with its principal place of business located at 1 Medical Center Blvd.- Upland, PA 19013-3988, and CompHealth ("CompHealth"), with its principal place of business located at 6440 South Millrock Dr., Suite 175, Salt Lake City, UT 84121 (collectively the "Parties" and each individually a "Party") is hereby entered into, made and effective as of March 21, 2008 ("Effective Date").

### 1. INTENT OF AGREEMENT
Client is in need of physician locum tenens staffing services. CompHealth is a locum tenens staffing company. By this Agreement, the Parties intend that CompHealth will furnish physicians ("Physician(s)") to provide clinical services to Client on a temporary basis ("Physician Coverage") for the time periods requested by Client ("Assignment(s)"). Therefore, this Agreement describes the relationship between the Parties with respect to Physician Coverage.

### 2. DUTIES OF COMPHEALTH
**2.A Arrangement of Assignments.** Client may request an unlimited number of Assignments hereunder. After arrangements have been made for a Physician to furnish Physician Coverage in response to a requested Assignment, CompHealth will confirm the Assignment in writing via an acknowledgment sent to Client ("Acceptance Letter"). Each Acceptance Letter shall include the name and specialty of Physician furnishing services hereunder, the dates and location of the Assignment, the Fees for the Assignment (as defined below), the applicable Recruitment Fee (as defined below) and deviations to this Agreement for that Assignment, if any. All Assignments are binding and subject to the cancellation provisions below once Client has signed the Acceptance letter. Client agrees to return signed Acceptance Letters within 2 business days of receipt or promptly object to incorrect Acceptance Letters.
**2.B Physicians as Independent Contractors of CompHealth.** Each Physician is an independent contractor of CompHealth. CompHealth shall be responsible for compensating Physicians directly. As independent contractors, CompHealth does not pay employment taxes for Physicians or furnish Worker's Compensation coverage. CompHealth's interest is in furnishing Physician Coverage; CompHealth does not make clinical decisions for Physicians and does not otherwise direct or control the clinical services furnished by Physicians. CompHealth makes no guarantee regarding any Physician and specifically disclaims the same.
**2.C Licensure.** CompHealth shall require each Physician furnishing Physician Coverage hereunder to be appropriately licensed. Physician shall be responsible for maintaining his or her license in good standing, if applicable.
**2.D Assignment of Billing Rights, Chart Documentation.** Fees due from patients as a result of Physician Coverage belong to Client. CompHealth agrees to direct Physicians to promptly execute such documents as are reasonably required to assign billing rights to Client. CompHealth directs Physicians to promptly complete chart documentation. Client shall take all reasonable measures to complete transcription prior to Physician's departure from an Assignment.
**2.E Professional Liability Insurance.** Unless otherwise specified in the Acceptance Letter, CompHealth shall provide professional liability insurance coverage for each Physician while on Assignment with Client to cover all incidents which may occur during an Assignment, regardless of when a claim is made, in limits of $1,000,000 per incident and $3,000,000 in the aggregate or such higher limits as may be required by law. Insurance coverage is subject to the terms of the policy and covers medical malpractice only.

### 3. DUTIES OF CLIENT
**3.A Client to Notify of Acceptability of Physicians.** In response to Client's request for Physician Coverage and subject to availability, CompHealth will present Physicians to Client for consideration. Client has the right to reject any Physician so presented.
**3.B Client to Furnish Practice Description, Establish Work Schedule and Furnish Equipment & Supplies.** For each Assignment, Client shall provide a practice description ("Practice Description"). Client agrees to not request Physician to perform work which materially deviates from the Practice Description. For each Assignment, Client shall provide each Physician with a reasonable work schedule. Client shall be responsible to provide each Physician with reasonably maintained and usual and customary equipment and supplies, and a suitable practice environment in compliance with acceptable ethical, medical and legal standards.
**3.C Housing & Travel Arrangements.** Unless otherwise specified in the Acceptance Letter, for each Assignment CompHealth shall make arrangements for and provide: a) reasonable living accommodations; b) reasonable round trip transportation to and from the Assignment; and c) local transportation ("Travel and Housing", which definition shall include a pro rata allocation for automobile insurance). Client agrees to reimburse CompHealth for the cost of Travel and Housing. The Parties may agree on a per Assignment basis that Client shall make arrangements for and provide Travel and Housing at its cost (except that in all cases Client shall reimburse CompHealth for mileage when Physician uses his or her own personal automobile). Agreements for Client to provide Travel and Housing shall be stated in the Acceptance Letter for the related Assignment.
**3.D Practice Standards.** Client shall comply with all applicable Joint Commission standards (if so accredited, Client need not comply with Joint Commission standards if not so accredited), OSHA, federal, state, local and other professional standards, laws, rules and regulations relating to patient care and work environment. CompHealth will direct Physicians to comply with Client's policies and procedures and all applicable professional standards, laws, rules, regulations and Joint Commission standards if Client is so accredited. It is Client's responsibility to inform Physicians of Client policies and procedures including Joint Commission standards.

**3.E Risk Management and Incident Reporting Cooperation.** Client agrees to cooperate with CompHealth's reasonable risk management and quality assurance activities. Should Client become aware of an incident or claim which may give rise to a claim under CompHealth's professional liability policy of insurance, Client agrees to promptly notify CompHealth of the nature of the claim and report all necessary information related to the claim. If Client is itself a staffing company or group that provides medical coverage to facilities, Client agrees to require its clients to agree to promptly notify Client and CompHealth of any incidents or claims which may give rise to a claim under CompHealth's professional liability policy of insurance. Client understands and agrees that failure to report an incident may result in loss of coverage. The obligations of this Paragraph 3.E shall survive any termination of this Agreement.
**3.F Change in Worksite Location.** Should Client wish to change the location of the worksite during any Assignment, it agrees to secure CompHealth's advance permission. In the event that Client wishes to change the location of the worksite, and such change results in the Physician having to commute more than thirty (30) minutes or thirty (30) miles from Physician's housing accommodations, then the Parties shall mutually agree upon a resolution that fairly compensates CompHealth and Physician for the change, which may include but is not necessarily limited to charges for Costs (as defined in Paragraph 5.A below) incurred in securing housing accommodations closer to the new worksite.

**4. FEES**
**4.A Fees.** Client shall pay CompHealth fees ("Fee(s)" or "Fee Schedule") for Physician Coverage for each Assignment as specified in the Acceptance Letter for that Assignment.
**4.B Deposit, Costs of Obtaining Privileges.** Upon an Acceptance Letter being issued for the first Assignment requested under this Agreement, Client shall pay to CompHealth a deposit of $0 to be credited towards the last two weeks of Physician Coverage and/or any applicable costs, such as Travel and Housing. No deposit shall be required for additional Assignments hereunder. Notwithstanding the foregoing, CompHealth reserves the right to require additional deposits or pre-payment during the Term of this Agreement if, in its sole discretion, Client's credit and payment history warrant doing so. Client agrees to be responsible for payment of the costs associated with obtaining privileges for each Physician that furnishes Physician Coverage hereunder.
**4.C Invoicing.** Fees are invoiced bi-weekly. Invoices shall include taxes. Fees are determined based upon Physician's work record. Invoices will include Housing and Travel charges incurred, if applicable, and other charges agreed upon in the Acceptance Letter, if any. It is understood that Travel and Housing charges may not appear on invoices immediately after the charges have been incurred and will instead appear when CompHealth is billed for these charges by its vendors. Upon request, CompHealth will provide a reconciliation within 30 days of the completion of an Assignment. Payment for each two-week period is due immediately upon receipt of an invoice for that period. Invoices shall be deemed received on the tenth (10th) business day after the date of invoice.
**4.D Holiday Premium.** Client agrees to pay a premium (in addition to Fees) of one-half of the daily or hourly rate as established by the Fee Schedule ("Premium") for New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving, Christmas, and other holidays recognized by the Client's facility ("Holiday(s)"). If no Physician Coverage is furnished on a Holiday, only the Premium shall be charged (as well as any Housing and Travel due).
**4.E Failure to Issue Acceptance Letter, No Acceptance Letter Necessary.** Should CompHealth fail to issue an Acceptance Letter for any Assignment or in the event an Acceptance Letter was never appropriate due to the fact that Client rejected a presented Physician as a candidate to provide Physician Coverage, such circumstance shall not abrogate Client's responsibility for payment of Fees for the Physician Coverage received or payment of a Recruitment Fee in the event Client or a third party offers Work, as described and defined below, to a Physician and Physician accepts. In that instance, the current market rate as reasonably determined by CompHealth for that specialty shall apply.

**5. TERM, CANCELLATION AND REMOVAL OF PHYSICIAN**
**5.A Cancellation of an Assignment.** For all confirmed Assignments (as evidenced by Client's signature on the Acceptance Letter for the related Assignment), Client must provide to CompHealth written and verbal notice of cancellation of an Assignment at least thirty (30) days in advance. Written notice shall be deemed to be received upon sending. In the event that Client provides less than thirty (30) days notice of cancellation Client shall be responsible for payment of the total Fee due for the period covered by the Assignment up to a maximum of thirty (30) calendar days ("Penalty"). Client shall also be responsible for payment of other actual fees and charges that may result from cancellation of an Assignment, including but not limited to lost rents, security deposits and airfare ("Costs") or from Physician Coverage actually performed. In the event that an Assignment is scheduled less than thirty (30) days in advance and Client cancels, Client shall be responsible for payment of the total Fee due for the period covered by the Assignment up to a maximum of thirty (30) calendar days (also "Penalty") as well as Costs that may result from cancellation as described in this Paragraph 5.A. Notwithstanding the foregoing, and provided that Client communicated its minimum credentialing and/or privileging requirements in writing at the time it requested an Assignment, in the event that a Physician is not granted privileges required for any Assignment or does not meet Client's minimum credentialing requirements, then Client shall not be liable for any Penalty or Costs associated with cancellation. Client may be requested to provide documentation evidencing that Physician does not meet Client credentialing requirements or was not granted privileges.
**5.B Inability to Fill Requests for Physician Coverage.** CompHealth does not guarantee the ability to fill Assignments requested hereunder. In the event a Physician for a binding Assignment cancels, CompHealth shall exercise best efforts to furnish a replacement Physician but shall have no other liability.
**5.C Termination of Agreement.** Either Party may terminate this Agreement or any Assignment with thirty (30) days notice, subject to Paragraph 5.A above. Termination by Client must be in writing. In the event of Client's failure to pay monies due hereunder or other material breach, CompHealth may immediately terminate this Agreement. The obligation to pay monies due under this Agreement shall survive termination.

**5.D Term.** The initial term of this Agreement ("Initial Term") shall begin on the Effective Date and continue for a period of one (1) year. Upon expiration of the Initial Term, this Agreement shall automatically renew for successive one-year periods (each a "Renewal Term") until terminated in accordance with Paragraph 5.C above. "Initial Term" and "Renewal Term" may be used in this Agreement interchangeably with "Term".

**5.E CompHealth Guarantee, Removal of Physician for Reasons Relating to Competence.** Upon commencement of an Assignment, Client may, in its reasonable discretion, request that a Physician be removed within two (2) working days of the start date of the Assignment for any reason. Client will not be charged for Fees associated with those two days of Physician Coverage. Client agrees to provide reasonable documentation evidencing its reasons for removal. Should Client determine that a Physician must be removed from an Assignment for reasons related to demonstrated professional incompetence at any time during the Assignment, Client shall communicate to CompHealth the reason for the removal request in advance of removal and cooperate with CompHealth in providing necessary risk management information. CompHealth shall verify and assess the reason for the requested removal and promptly notify Physician of the removal. CompHealth reserves the right to first counsel Physician and provide an opportunity for Physician to correct any deficiencies prior to any such removal if, in its reasonable discretion, there is no risk of patient endangerment. CompHealth will not remove a Physician from an Assignment for discriminatory reasons.

## 6. LATER PLACEMENTS

**6.A Client Offer of Position to Physician.** Client agrees that should it, or any third party introduced to Physician by Client (when the introduction has been made for the purpose of enabling the third party to recruit Physician for Work or when the third party is a facility to whom Client has furnished Physician's services), offer Work (as defined below) to any Physician introduced to Client by CompHealth for a period of 2 years after the first date of introduction to Client or, if Physician has furnished Physician Coverage for Client, for a period of 2 years after the last day of Physician's last Assignment with Client under this Agreement, and said offer is accepted, then Client shall pay to CompHealth as consideration for the introduction a recruitment fee in the amount as listed in the related Acceptance Letter ("Recruitment Fee") per Physician so hired or engaged, regardless of whether or not that Physician actually performed work for Client through CompHealth. This Paragraph 6.A shall survive termination of this Agreement.

**6.B Client Notification of Previous Knowledge of Physician.** Client must inform CompHealth in writing within 2 days if any Physician presented by CompHealth is already known to Client through means other than CompHealth. If Client fails to so notify CompHealth, CompHealth shall be deemed to have made the introduction.

**6.C Recruitment Fee Payment Terms.** If a Physician accepts Work, the Recruitment Fee must be paid in full prior to the first day the Physician performs services in the new position. Fees shall be assessed for Physician Coverage up to the date the Recruitment Fee is paid. Once the Recruitment Fee is paid for any Physician under this Agreement, CompHealth shall not assess further Fees for that Physician and there shall be no further obligation as between CompHealth and Client with respect to that Physician except for Client's obligation to reimburse CompHealth for outstanding Travel and Housing costs, if any.

**6.D Definition of Work.** For purposes of this Agreement, "Work" shall mean an offer to work, said offer being either verbal or written, on a part or full time basis, temporary or permanent, directly as an employee or independent contractor or indirectly when arranged through another staffing company or medical group.

## 7. STANDARDS OF SERVICE

**7.A Medicare and Medicaid Fraud Representation.** Each Party represents that it is not currently under investigation or debarred by any state or federal governmental agency for Medicare or Medicaid fraud. Further, each Party represents that to the best of its reasonable knowledge its currently practicing staff (to include for CompHealth the Physicians and for Client its physicians and staff, hereinafter collectively "Staff") are not under sanction by a state or federal governmental agency, that its Staff are not currently excluded from participating in the Medicare or Medicaid programs, and that no such proceeding is pending. In the event an investigation of a Party is initiated by any state or federal governmental agency, or it is discovered that the representations contained herein are false, the non-breaching Party reserves the right to immediately terminate this Agreement. It is understood and agreed to by the Parties that the ability to verify if any Staff are currently debarred is dependent upon the accuracy of the information contained on the OIG list of excluded persons and the representations of each individual Staff.

**7.B Health Insurance Portability and Accountability Act of 1996 (HIPAA).** In order to carry out its insurance obligations hereunder and for risk management purposes, CompHealth occasionally may receive or request patient information. CompHealth and Client agree that CompHealth is a business associate as that term is defined under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). As a business associate, CompHealth agrees to: a) implement appropriate safeguards and maintain individually identifiable patient health information ("Protected Health Information" or "PHI", including electronic PHI) as required by HIPAA; b) use and disclose only the minimum necessary PHI; c) use and disclose PHI only as permitted under HIPAA for legal, management and administrative purposes in connection with treatment, payment and healthcare operations or as required by law; d) require third parties to whom it may disclose PHI to agree in writing to similar restrictions and to comply with HIPAA; e) track disclosures of PHI as required under HIPAA, to include the nature of the information disclosed, the date of the disclosure, to whom the information was disclosed, address of the recipient if known and the purpose of the disclosure and provide Client with an accounting of such disclosures promptly upon request; f) promptly notify Client of disclosures of PHI in violation of HIPAA and this Agreement and take steps to mitigate, to the extent practicable, deleterious effects of improper use of PHI; g) promptly make PHI available to Client and patients upon request; h) permit patients to request amendment to or correction of PHI, amend and/or correct PHI as appropriate when so requested, notify Client of requests for correction and amendments to PHI by patients and incorporate into PHI amendments and/or corrections made to PHI by Client as directed by Client. CompHealth acknowledges that PHI received from Client shall remain Client's property and that within ten (10) business days of Client's request or upon

termination of this Agreement, said PHI shall be returned to Client or be destroyed, if Client so directs. If such return or destruction is infeasible, CompHealth shall use such PHI only for purposes that make such return or destruction infeasible and the provisions of this Agreement shall survive with respect to such PHI. CompHealth has established internal policies and procedures regarding HIPAA compliance and privacy and agrees to make such policies and procedures available to Client upon request. CompHealth agrees to execute a business associate agreement with Client to supplement this Agreement if requested, subject to the Parties agreement upon terms and conditions of the business associate agreement.

**7.C Availability of Books and Records.** To assist Client in verification of Medicare and Medicaid reimbursable costs, and in order to fulfill HIPAA requirements, CompHealth agrees for the time period required by law after furnishing services hereunder to make available to Client and appropriate governmental authorities at CompHealth corporate offices such agreements, books, documents, and records as are required by law.

## 8. GENERAL

**8.A Interest and Attorney's Fees.** Client agrees to pay all expenses and costs, including interest and attorneys' fees, which may be incurred if collection efforts are necessary to enforce this Agreement. Client agrees to pay interest at a rate of 1-1/2 percent per month on any unpaid balance.

**8.B Patient Compensation Funds.** Client agrees to reimburse CompHealth for the actual amounts assessed against CompHealth in connection with Physician Coverage performed under mandatory state patient compensation or medical professional liability funds when Physician Coverage is furnished in a state with such funds.

**8.C Entire Agreement.** This Agreement contains the entire agreement between CompHealth and Client relating to Physician Coverage as herein arranged and supersedes all previous contracts and all prior agreements between the Parties relating to Physician Coverage as herein arranged. This Agreement may be limited to a particular department or division of Client if so indicated, in which case this is the entire agreement between the Parties relating to Physician Coverage for that particular department or division only and supersedes all prior agreements relating to that particular department or division only. Acceptance Letters hereunder may function to amend this Agreement on a per Assignment basis only. All other amendments to this Agreement must be in writing and signed by both Parties. In the event of a conflict between this Agreement and any Acceptance Letter, the Acceptance Letter shall control with respect to the Assignment covered by the Acceptance Letter only.

**8.D Notices.** For all notices required hereunder, including Acceptance Letters, acceptable forms of communication include facsimile, electronic mail or letter sent via U.S. mail or express delivery. Notices communicated via U.S. mail or express delivery shall be effective if sent to the physical address listed in the introductory paragraph of this Agreement or such other address as may be designated in writing. Notices communicated via facsimile and electronic mail shall be effective if sent to the facsimile number and electronic mail address used by the Parties in the regular course of dealing hereunder.

**8.E Severability, Successors, Discrimination, Governing Law.** If any provision of this Agreement is deemed to be invalid by a court of competent jurisdiction, all other provisions will remain effective. Failure to exercise or enforce any right under this Agreement shall not be construed to be a waiver. This Agreement shall inure to the benefit of and bind each Party's successors in interest. Neither Party shall discriminate against any Physician on the basis of race, age, gender, disability, religion, national origin, military/veteran status, pregnancy, or sexual orientation. This Agreement shall be governed by the laws of the State of Pennsylvania.

**8.F Client as Staffing Company or Medical Group Furnishing Clinical Services to Facilities.** In the event that Client is itself a staffing company or medical group using CompHealth Physicians to furnish clinical services to facilities, Client agrees to require its clients to agree to the provisions of Paragraphs 3.B, 3.D, 3.E and 7.A of this Agreement. The fact that Client is itself a staffing company or medical group using CompHealth Physicians to furnish clinical services to facilities shall not limit, modify or reduce any of Client's obligations hereunder.

**8.G Facsimile Signature Deemed Original.** A facsimile signature hereon shall have the same effect as an original.

The Parties acknowledge by their signatures below that they have read, understand and agree to the foregoing Service Agreement for Physician Locum Tenens Coverage, Fees in Signed Acceptance Letter. By signature below, the undersigned represents that he or she has authority to bind his or her respective Party to the foregoing.

CROZER-KEYSTONE HEALTH CARE SYSTEM
By: _[signature]_
Title: PRESIDENT
Date: 7/3/08
Printed Name: BRAD PRECHTL

COMPHEALTH
By: _[signature]_
Title: Admin Mgr
Date: 7/10/08

Federal Tax I.D.# or Social Security #

©Copyright 2007 CHG Management, Inc.